UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL V., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI,[1] *Acting Commissioner of Social Security*, <br><br> Defendant. | Case No.: 21cv0643-MDD <br><br> **ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW AND AFFIRMING THE COMMISSIONER'S FINAL DECISION** <br><br> [ECF No. 24] |

Paul V. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's Title XVI application for Supplemental Security Income. (ECF No. 1). The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled and

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021 and is substituted for Andrew M. Saul as the Defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1

denied Plaintiff's claim for benefits from September 1, 2011, through the date of the decision, February 11, 2020. (AR at 44). On August 9, 2022, the parties filed a Joint Motion for Judicial Review of the ALJ's decision. (ECF No. 24).

For the reasons expressed herein, the Court **AFFIRMS** the Commissioner's decision.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff applied for Title II Social Security Disability Insurance benefits and subsequent Title XVI Supplemental Security Income benefits on February 4, 2013. (Administrative Record "AR" at 136).[2] His initial application alleged disability beginning September 1, 2011, when he was 39 years old. (*Id.* at 42, 136). These claims were initially denied on July 31, 2013, and upon reconsideration on March 7, 2014. (AR at 163-82). On June 8, 2014, Plaintiff filed a written request for a hearing. (AR at 251). A hearing date was set for May 16, 2016, but Plaintiff requested that the hearing be rescheduled. (AR at 276, 288). Plaintiff's request to reschedule was denied on April 28, 2016, and Plaintiff subsequently failed to appear at the hearing, which resulted in an Order of Dismissal on May 26, 2016. (AR at 205-06). On January 27, 2017, upon written request for review, the Appeals Council vacated the dismissal and remanded the matter back to the ALJ to give Plaintiff an opportunity for a hearing. (AR at 209-10).

The hearing on remand occurred October 5, 2017, before ALJ Robin Henrie. (AR at 214-24). On January 31, 2018, ALJ Henrie issued an

---

[2] "AR" refers to the Certified Administrative Record filed on November 16, 2021. (ECF Nos. 12-13).

unfavorable decision and found that Plaintiff was not disabled under the Social Security Act. (AR at 223-24). On February 12, 2019, upon written request for review, the Appeals Council remanded the case for additional proceedings. (AR at 234). The Appeals Council vacated the 2018 hearing decision due to errors of law after ALJ Henrie failed to consider supplemental evidence that Plaintiff provided. (*Id.*).

A subsequent hearing on remand was held on January 29, 2020, before ALJ Kevin Messer. Plaintiff appeared at the hearing and was represented by his attorney, Laura Krank. (AR at 31). Testimony was taken from Plaintiff and Vocational Expert ("VE") Connie Guillory. (AR at 55-96).

On February 11, 2020, ALJ Messer issued an unfavorable decision, concluding that Plaintiff was not disabled based on his capability "of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR at 31-44). Plaintiff requested Appeals Council review, which was denied by notice on September 15, 2020. (AR at 12). Therefore, ALJ Messer's February 11, 2020, decision is the final decision of the Commissioner. Having exhausted all administrative remedies, Plaintiff brought this timely civil action, seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  DISCUSSION

### A.  Legal Standard

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. *Id.*; *see also Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004) (An

"ALJ may discount treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.") (citations omitted).

Substantial evidence "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019). Courts look "to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme Court] has said, is 'more than a mere scintilla.' It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* The Ninth Circuit explains that substantial evidence is "more than a mere scintilla but may be less than a preponderance." *Molina v. Astrue,* 674 F.3d 1104, 1110-11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by regulation on other grounds.*

An ALJ's decision is reversed only if it "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Id.* "To determine whether substantial evidence supports the ALJ's determination, [the Court] must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn v. Saul,* 988 F.3d 1111, 1115 (9th Cir. 2021) (citing *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001)). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).

"When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." *Mayes*, 276 F.3d at 459. Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

B.   **Summary of the ALJ's Findings**

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, ALJ Messer found that, aside from the period from February 2014 to March 2015, Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (AR at 33-34). ALJ Messer found at step two that Plaintiff had the following severe impairments:

> morbid obesity; degenerative disc disease of the lumbar and cervical spine; diabetes mellitus type 1; degenerative joint disease of the left shoulder; status post left shoulder fracture; lumbar radiculopathy; cervicalgia; peripheral and central vestibular dysfunction; and cerebral concussion.

(AR at 34). Next, after considering the entire record, ALJ Messer determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; and frequently perform overhead reaching with the left upper extremity. The claimant must avoid concentrated exposure to extreme heat, and to hazards such as operational control of moving machinery and unprotected heights.

(*Id.* at 35).[3]  The ALJ stated that his RFC assessment was based on all the evidence and the extent to which Plaintiff's symptoms are consistent with the objective medical evidence and other evidence.  (*Id.*).  The ALJ also stated that he considered the opinion evidence and prior administrative medical findings in accordance with the requirements of 20 C.F.R. §§ 404.1520(c) and 416.920(c).  (*Id.* at 34).

The ALJ then proceeded to step four of the sequential evaluation process.  He determined Plaintiff was unable to perform any past relevant work as a chauffeur or sales route delivery driver, and the vocational expert agreed with that assessment.  (AR at 42).  Considering Plaintiff's age, education, work experience, and RFC, ALJ Messer found Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR at 43).  The ALJ explained that transferability of job skills was not material because the claimant was deemed not disabled.  (*Id.*).

For purposes of his step five determination, the ALJ accepted the testimony of the VE.  (AR at 43).  The VE testified that Plaintiff could perform the requirements of representative occupations such as Hand Packager (DOT No. 920.687-018) (light/svp-1), Sub-assembler (DOT No. 729.684-054) (light/svp-2), and Inspector (DOT No. 559.687-074) (light/svp-2).  (*Id.*).  The VE testified that those positions existed in significant numbers in

---

[3] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *See* 20 C.F.R. §§ 404.1567 and 416.967.

the national economy. (*Id.*). The ALJ, therefore, found that Plaintiff was not disabled since his alleged onset date of September 1, 2011, through the date of the decision on February 11, 2020. (AR at 43-44).

### C. Issue in Dispute

The sole issue presented is whether the ALJ properly evaluated the medical opinion evidence from Plaintiff's treating physician, Dr. Stuart Kramer, M.D. ("Dr. Kramer"). Plaintiff argues that in formulating the RFC, the ALJ should have weighed the opinion of Dr. Kramer differently, or more specifically, that the ALJ should have better explained his reasons for affording Dr. Kramer's medical opinion little weight. (ECF No. 24 at 5-7).

**1. The Law Concerning Medical Opinion Evidence**

The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the Plaintiff ("treating physicians"); (2) those who examine but do not treat the Plaintiff ("examining physicians"); and (3) those who neither examine nor treat the Plaintiff ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996), *superseded for cases filed on or after March 27, 2017*. As a general rule, more weight is given to the opinions of a treating source than to that of a non-treating physician. *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). Likewise, the opinion of an examining physician is typically entitled to greater weight than that of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

For claims filed before March 27, 2017, such as the case here, "the treating source rule" set forth in 20 C.F.R. § 404.1527 applies. *See* 20 C.F.R. § 404.1527(c). Under those provisions, an ALJ is to weigh medical source opinions according to the following factors: (1) the examining relationship; (2) the length, frequency, nature and extent of the treatment relationship; (3)

supportability of the opinion; (4) consistency with the record; (5) specialization of the provider; and (6) other factors a claimant brings to the ALJ's attention. *Id*. The ALJ does not need "to make an express statement that [he] considered all the factors outlined in 20 C.F.R. § 404.1527(c)." *See Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. 2018).

The ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b). Although the ALJ is not bound by the medical opinion of a treating doctor on the ultimate question of disability, the treating source rule "allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for 'clear and convincing reasons,' and allowed a contradicted opinion to be rejected only for 'specific and legitimate reasons' supported by substantial evidence in the record." *Kathy Jean T. v. Saul*, No. 20cv1090-RBB, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021) (citing *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017)).

In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit held:

> If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the 'length of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician. Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians.

*Id.* at 631 (internal citations omitted).

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted) ("We afford greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'").

### 2. Dr. Kramer's Medical Opinion

On January 21, 2020, Plaintiff's treating physician, Dr. Kramer, completed a medical source statement, and made numerous findings that the ALJ did not find controlling. (AR at 2725-27). Dr. Kramer concluded that Plaintiff only had the capacity to sit for 15-20 minutes at one time; stand and walk 5 minutes at one time; sit 4 hours in an 8-hour day; stand and/or walk 4 hours in an 8-hour day; take an unscheduled break every hour for 5-10 minutes; rarely hold his head up in a static position or twist; never stoop (bend), crouch/squat, or climb ladders; lift and carry 10-20 pounds occasionally, and less than 10 pounds frequently; and was limited in the use of his hands, fingers, and arms from to 25% to 40% of an 8-hour workday. (*Id.*). Dr. Kramer anticipated that the Plaintiff's impairments or treatment would cause him to be absent from work more than 4 days per month. (*Id.*).

The ALJ acknowledged Dr. Kramer's ongoing treatment of Plaintiff, including the doctor's role in Plaintiff's workers' compensation claims, and then the ALJ afforded only some weight to those opinions finding them (1) not supported by Dr. Kramer's own records, (2) unsupported by the totality of the evidence, (3) too restrictive in light of the objective medical records, and (4) overly reliant on Plaintiff's subjective reports of symptoms and limitations. (AR at 38-40).

Plaintiff argues the ALJ "did not provide any discussion or analysis in assigning little weight to Dr. Kramer's opinion." (ECF No. 24 at 6). Plaintiff interprets the ALJ's findings as "conclusions without drawing any

distinctions or specific inconsistencies between Dr. Kramer's opinion and the medical evidence." (*Id.*).  That, however, simply is not the case.

### 3. The ALJ Provided Specific and Legitimate Reasons for Affording Dr. Kramer's Medical Opinion Little Weight

The ALJ's opinion is replete with "specific and legitimate reasons" for discounting Dr. Kramer's opinion.  The ALJ took issue with inconsistencies between Dr. Kramer's own records and his opinion, the way Dr. Kramer's opinions conflicted with other doctors' medical reports and objective test results, and several aspects of Plaintiff's statements when compared to evidence of his physical abilities and daily activities.  The Court considers each *seriatim*.

   a. <u>Dr. Kramer's Medical Records Were Not Consistent with His Restrictive Limitations</u>

The ALJ pointed out incongruity between Dr. Kramer's own treatment records and the restrictive limitations he recommended.  For example, despite Plaintiff's subjective complaints to Dr. Kramer, the doctor's April 8, 2016, physical examination of Plaintiff, as well as several prior examinations, revealed numerous normal findings.  (*See* AR at 1275, 1285, 1289, 1319, 1331, 1462, 2398-99).  Dr. Kramer opined that Plaintiff should be precluded from "very heavy work" to prevent potentially dangerous hypoglycemic episodes, with which the ALJ acknowledged and agreed, and thus restricted Plaintiff's lifting to 20 pounds.  (AR at 40, 1279).  Yet, Dr. Kramer's opinion limited Plaintiff to lifting and carrying 10 pounds frequently.  That inconsistency was one stated reason for affording only some weight to Dr. Kramer's opinion.  (AR at 40).

As to Dr. Kramer's medical reports for Plaintiff from 2016 to 2019, the ALJ noted that Plaintiff had reported conditions of blackouts, dizziness, and

severe neck and low-to-mid back pain and headaches. (AR at 40, 2601-76). ALJ Messer explained, however, that those records did not provide corresponding findings concerning Plaintiff's range of motion, sensory abilities, motor strength, or deep tendon reflexes in order to support a disabling impairment. (*Id.* at 38-39). Other doctors did include such findings in their reports, but their findings did not support such extreme restrictions.

> b. <u>Dr. Kramer's Opinion Was Not Consistent with the Totality of the Medical Record</u>

The ALJ pointed to many specific medical reports for Plaintiff that were inconsistent with Dr. Kramer's restrictive opinion. For example, doctors' reports from ENT Associates of San Diego, who examined Plaintiff from April 3, 2014, through July 10, 2019, recorded multiple physical examinations of Plaintiff that demonstrated he had "a normal gait and stance and no edema or cyanosis of the extremities." (AR at 2261, 2307, 2320-21, 2323-24, 2333, 2337-38, 2341-42, 2346, 2351-52). The ALJ explained that those records were inconsistent with a finding of significant limitations in walking and standing, but they aptly supported an RFC of light work. (AR at 38).

The ALJ further explained that another physician, neurologist Dr. Thomas A. Schweller, M.D., issued a neurological consultation report after examining Plaintiff on December 19, 2018, and monitoring Plaintiff through July 2019. That 2018 exam revealed unremarkable findings, which also did not support significant limitations on sitting, standing, and walking as Dr. Kramer suggested. (AR at 2251-55, 2261). Those medical examinations are many of the same reports that Dr. Kramer used in formulating his opinion. (AR at 2399-2419).

Dr. Schweller also recorded that Plaintiff's vital signs were normal, and his mental status revealed an ability to remember two of three objects,

confabulating a pear. (*Id.*). Plaintiff also remembered the street address of the President; his affect was appropriate, and communication skills were intact. (*Id.*). Plaintiff's station and gait were unremarkable, including heel walking, toe walking, tandem walking, and Romberg testing. (AR at 2253). Plaintiff's cranial nerves II through XII were within normal limits (noting slight discomfort with optic kinetic testing). (*Id.* at 2254). Plaintiff's motor strength was 5/5 in the upper and lower extremities, and his Jamar grip on the right (dominant extremity) was 50 pounds and left 40 pounds. (*Id.*). Sensory findings revealed decreased touch along both palms and the anterior thighs, and deep tendon reflexes were 1+ and symmetric at both biceps, both brachioradialis, and both triceps, with both knee jerks and ankle jerks absent. (*Id.* at 2253-54). The plantar responses were flexor bilaterally. (AR at 38). Plaintiff's neck range of motion was full, and lumbar range revealed tenderness in lumbar paraspinal muscles. (AR at 38, 2252-55). Dr. Schweller continued to assess Plaintiff through July 24, 2019, finding normal and clear vitals, general alert assessments, clear eyes and lungs, no jugular venous distention, a regular heart, and no clubbing, cyanosis or significant edema. (AR at 2282).

The ALJ explained that a February 22, 2019, MRI of Plaintiff's brain was unmarkable, with "No evidence of hemorrhage, mass, or acute infarction. No other parenchymal abnormality. Ventricles within normal limits." (AR at 2737). ALJ Messer also referenced diagnostic imaging of Plaintiff's spine that took place on December 12, 2019. (AR at 2736). Those findings showed that Plaintiff's alignment was "anatomic" with "No abnormal motion. No fracture. No prevertebral soft tissue swelling." (AR at 38, 2736). The ALJ cited those studies to conclude that Plaintiff's spine did not show significant objective findings to support a more restrictive RFC. (AR at 40).

The ALJ also cited earlier medical reports concerning Plaintiff's cervical and lumbar spine impairments and concluded that those records also did not establish significant functional limitations in walking, standing and other activities. Dr. John Cleary, M.D., examined Plaintiff three times before he provided a March 26, 2012, neurosurgical consultation for him; those prior appointments were in 1998, 2003, and 2010. (AR at 37, 644, 648). Dr. Cleary's 2012 opinion relied in part upon a diagnosis from an MRI that Dr. J. Kaiser ordered on October 28, 2010, which found only mild to moderate multi-level facet arthropathy. (AR at 648). The ALJ noted that Plaintiff's lumbar spine shoulder flexion was 80 degrees (with 120 being normal). (AR at 647). Lateral flexion and rotation to either side was full. (AR at 646-47).

Concerning Plaintiff's diabetes, in 2012, Plaintiff was receiving Humalog by pump, and his blood sugars were under control. (*Id*. at 645). During the same time-period, a medical report for Plaintiff reflected that he was walking twice a week for an hour. (AR at 706).

The ALJ cited six weeks of acupuncture treatment that Plaintiff had with the Shandong Acupuncture Center in August 2019, where reports showed that Plaintiff complained of constant neck pain and back pain, with muscle spasm and constant pain radiation across the low back and into his buttocks and lower extremities. (AR at 2741). Plaintiff told them his pain was exacerbated by prolonged sitting, standing, walking and lifting. (*Id*. at 2742). Despite his complaints, Plaintiff reported that he was walking 100 yards, and he denied weakness in the lower extremities. (*Id*.). That 2019 physical exam revealed no edema, clubbing, or cyanosis of the extremities; Plaintiff had a 5/5 motor strength in the lower extremities, full range of motion and no tenderness in the thoracic spine, and 20% limited range of motion on extension of the cervical spine. (AR at 2744).

Plaintiff's Licensed Acupuncturist, Ying Jiang, noted moderate tenderness to palpation along Plaintiff's upper trapezius muscles, moderate tenderness bilaterally around the thoracic spine region, moderate tenderness to palpation in the low back, muscle spasms bilaterally, and range of motion at the lower lumbar region limited 25% forward, and in backward and lateral bending. (*Id.*). The acupuncturist diagnosed Plaintiff with low back pain, radiculopathy in the lumbar region and cervicalgia, and ordered acupuncture twice a week, for 6 weeks. (*Id.* at 2747). After those sessions, the "frequency and intensity" of Plaintiff's chronic neck and lower back pain improved 15%. (*Id.*). After an additional month of treatment, Plaintiff's muscle strength in both lower extremities was 5/5. (*Id.* at 2749).

ALJ Messer considered Plaintiff's impairments related to peripheral and central vestibular dysfunction and cerebral concussion causing dizziness and blackouts, and a neurological exam from September 2015 that reported a normal EEG, no cranial nerve abnormalities, normal sensation to pain, no motor function abnormalities, no gait and stance abnormalities, normal reflexes of the biceps, brachioradialis, triceps, biceps, and knees, and no peripheral nerve problems. (AR at 2364-65). The medical recommendations included vestibular rehabilitation, Xanax, and a return appointment. (*Id.*).

The record also cites to appointments with ENT, Dr. Tarek Hassanein, in May 2017, which affirmed that "Cranial Nerves II-XII" were "grossly intact and symmetrical," with gait and station normal as well. (AR at 2333). ALJ Messer further explained that in July 2019, Dr. Jeremiah J. Moles, M.D., an ENT, similarly concluded that all testing "including cardiology work up, carotid, and vertebral arteries" were normal, and "MRI of IAC, brain, and C-spine are normal." (AR at 2346). The ALJ cited and concluded that multiple

physical exams "showed normal HEENT[4] (including normal ability to communicate)" and "no neurological findings to support disabling limitations due to the peripheral and central vestibular dysfunction and cerebral concussion." (AR at 40).

The ALJ incorporated findings from December 12, 2014, through September 11, 2015, reflecting that Plaintiff had an unsteady tandem gait, sensation loss of vibration, and a positive Romberg's sign (*i.e.*, loss of balance test when a claimant stands still). (AR at 2365-66). The ALJ credited Dr. Kramer's environmental limitations, secondary to Plaintiff's hypoglycemic episodes. (AR at 39-40). He explained that that he had incorporated all such findings into his RFC. (*Id.* at 40). And, while the state agency medical consultants opined that Plaintiff could perform medium work with fewer restrictions, ALJ Messer rejected those opinions because the overall medical evidence was more consistent with an RFC for light work, and those opinions were more remote in time. (*Id.*). The ALJ expressly recognized that Plaintiff's conditions had worsened since those state examinations. (*Id.*).

The ALJ said that Plaintiff's RFC considered his workers' compensation impairments, which concluded that he would be "precluded from the performance of very heavy work[5] . . . not work at heights or around dangerous equipment, including moving vehicles [and] to prevent diabetes aggravation, any employment will need to be in an environment which does not expose the claimant to undue emotional stress." (AR at 1279). The

---

[4] HEENT stands for the head, ears, eyes, nose, and throat portion of the doctor's examination.

[5] Heavy work involves "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." *See* 20 C.F.R. §§ 404.1567 and 416.967.

workers' compensation whole-person impairment rating was 35%. (AR at 1042, 1088). The ALJ explained, however, that on July 18, 2016, Plaintiff's treating doctor, Blake Thompson, M.D., concluded that Plaintiff's whole person impairment was only 4%. (AR at 1042, 1188). The ALJ found Dr. Thompson's report more credible than the worker's compensation evaluation because Dr. Thompson made a thorough review of the medical record, which was included in his report, and it supported the limitation on Plaintiff's ability to lift at least 20 pounds. (*Id.*).

Dr. Thompson's subsequent April 25, 2017, examination showed that Plaintiff's shoulder surgery was well-healed, and he had regained good strength, with mild tenderness and a decreased range of motion. (AR at 41, 1188, 1245). The ALJ explained that workers' compensation recommendations were not dispositive of Plaintiff's capability to work because they are calculated in a different manner than social security benefits. (AR at 41). The ALJ accommodated the decreased range of motion by limiting Plaintiff to frequent overhead reaching with the left upper extremity. (AR at 35). The ALJ also discussed findings and reports related to Plaintiff's obesity and his few psychiatric symptoms, noting that the RFC more than adequately accounted for those issues. (AR at 39-41).

In summary, the ALJ has explained and sufficiently established that he considered all the medical opinion evidence in accordance with the requirements of §§ 404.1527 and 416.927 (opinion evidence for claims filed before March 27, 2017). The contradictory opinions of other treating and examining physicians, as well as the objective medical test results cited, are well articulated and supported reasons for affording Dr. Kramer's opinion only some weight. *See Weiss v. Astrue*, No. 12CV0719-CAB WMC, 2013 WL 4517863, at *11 (S.D. Cal. Aug. 19, 2013) ("Contrary opinions of examining

physicians may serve as additional specific and legitimate reasons for assigning a lower weight to the opinion of a treating physician.") (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

          c.     <u>Treatment Gaps and Inconsistent Reports About Plaintiff's Physical Abilities</u>

The ALJ also took issue with significant gaps in Plaintiff's history of treatment. (AR at 37). Notably, in April 2016, Plaintiff reported he had not seen a pain specialist since 2013. (AR at 1274). The ALJ also described how Plaintiff's physical capabilities exceeded his reported limitations. (AR at 37). Contrary to the limitations Dr. Kramer suggested, Plaintiff testified that in March 2017, he traveled by plane across the country to see his nephew perform at Carnegie Hall and that Plaintiff needed no assistance during that trip, except for help lifting his suitcase. (AR at 113-15). Plaintiff also described traveling 5.5 hours by car to Mexico without incident in October 2017. (*Id.*).

The ALJ specified that evidence of Plaintiff's physical abilities and activity level contributed to affording Dr. Kramer's opinion only some weight. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (affirming ALJ's crediting of objective evidence, contradictory statements that plaintiff offered regarding his capabilities, and factual evidence of plaintiff's functional abilities in rejecting treating physician's opinion), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

### d. Plaintiff's Activity Level

ALJ Messer stated that, throughout the period under adjudication, Plaintiff reported that he had been able to complete a wide range of daily living activities that supported light work, such as taking care of his basic needs, doing household chores, including laundry and cooking, as well as walking, sitting for long hours, traveling, driving, watching television, and grocery shopping, while also having gainful activity during one of the years at issue, February 2014 to March 2015. (AR at 33, 42, 113-14, 706, 932-35, 993).

The ALJ pointed out that in a January 31, 2014, adult function report, Plaintiff self-reported that he could use a computer, do paperwork, watch television, make telephone calls as needed, pick-up the grandkids from school, wash dishes, do laundry and some household cleaning, prepare simple meals, and handle his personal care and hygiene. (AR at 42, 521-28).

Although Plaintiff was laid off work in 2011, the ALJ recognized that was not because of an impairment, and that Plaintiff began looking for and acquired a more flexible position as a limousine driver. (*Id.* at 37, 108-09). Plaintiff's ability to perform easier work than he historically did, after his alleged onset date, was "one factor of many" the ALJ said showed Plaintiff could perform work at substantial gainful activity levels. (AR at 37).

Conflict between a medical opinion and a plaintiff's activity level is a valid basis for rejecting a medical opinion. 20 C.F.R. § 404.1520c(b)(2); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (inconsistencies between the limitations a treating physician assigned and a claimant's daily activities "may justify rejecting a treating provider's opinion.") (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities as a specific and legitimate reason to discount the

treating physician's opinion)); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding a medical source's proposed restrictions inconsistent with the level of activity in which plaintiff engaged); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (ALJ may consider daily activities); *Molina*, 674 F.3d at 1112 (ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms").

### e. Evidence of Plaintiff's Exaggerated Statements

The ALJ also explained that Plaintiff's allegations and testimony were inconsistent with the totality of the record, highly suggesting Plaintiff exaggerated his allegations of cognitive and physical limitations.[6] (AR at 42). The ALJ appropriately concluded that Dr. Kramer's opinion was overly reliant on Plaintiff's subjective symptom reports where multiple physical examinations revealed results and conclusions that were inconsistent with those subjective reports, as described throughout the ALJ's decision and summarized herein. *See Salerno v. Astrue*, 266 F. App'x 570, 573 (9th Cir. 2008) (the ALJ appropriately gave less weight to treating doctor's assessment of claimant's RFC because it was premised on claimant's "exaggerated" and "not fully credible" subjective complaints) (citing *Fair v. Bowen*, 885 F.2d 597, 604–05 (9th Cir. 1989) (Where a treating physician's medical opinion is based on the subjective complaints of the claimant and the ALJ has found the claimant's subjective reports of pain not fully credible, the ALJ is justified in

---

[6] Plaintiff does not challenge the ALJ's negative credibility finding; therefore, any challenge to that finding is waived. *Goodwin v. Colvin*, No. 2:15-CV-00319-MKD, 2016 WL 7478966, at *5 (E.D. Wash. Dec. 29, 2016) (citing *Hughes v. Astrue*, 357 F. App'x 864, 866 (9th Cir. 2009) (holding failure to challenge the ALJ's credibility finding in the district court waives any challenge to that finding on appeal).

discounting the treating physician's opinion.)); *see also Britton v. Colvin*, 787 F.3d 1011, 1014 (9th Cir. 2015) (ALJ properly discounted medical expert's opinion that was based on claimant's exaggerated testimony).

On this record, the Court concludes the ALJ did not err when he gave only some weight to Dr. Kramer's opinion because the ALJ provided specific and legitimate reasons for doing so based on substantial evidence in the record as expressly stated herein. *See generally Montoya v. Colvin*, 649 F. App'x 429, 430 (9th Cir. 2016) (The ALJ gave sufficiently "specific and legitimate reasons" for giving little weight to the opinion of the plaintiff's treating physician).

### III. CONCLUSION

Based on the foregoing, the Court **ORDERS** the Joint Motion be **GRANTED** in favor of Defendant. Accordingly, the final decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: September 8, 2022

Hon. Mitchell D. Dembin
United States Magistrate Judge